**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTOINETTE ANELA, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 17-5624 |
| v. | : | |
| | : | |
| AR RESOURCES, INC., | : | |
| Defendant. | : | |

**June 12, 2018**                                                                                                     **Anita B. Brody, J.**

**MEMORANDUM**

**I. INTRODUCTION**

Plaintiff Antoinette Anela ("Anela") is a consumer and the recipient of a letter alleging that she owes medical debt. Defendant AR Resources, Inc. ("ARR"), the letter sender, is a Pennsylvania collection agency that collects consumer debts. Anela brings a claim against ARR for violation of the Fair Debt Collection Practices Act ("FDCPA") by (1) failing to effectively provide Anela with the validation notice required by 15 U.S.C. § 1692g and (2) failing to comply with 15 U.S.C. § 1692e, which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e, 1692e(10). ARR moves to dismiss the Amended Complaint. For the reasons set forth below, I will grant ARR's motion to dismiss.

## II. BACKGROUND[1]

Anela is a consumer who resides in Willow Grove, Pennsylvania. Am. Compl. ¶ 8. ARR is a Pennsylvania collection agency. Am. Compl. ¶ 9. On November 4, 2016, ARR sent a debt collection letter ("Letter") to Anela demanding payment of the alleged medical debt. Am. Compl. ¶ 14.

The Letter includes a validation notice as required by 15 U.S.C. § 1692g:

> Unless you notify this office within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Am. Compl. Ex. A.

Anela alleges that two additional sentences, considered individually and collectively, confuse and overshadow the required statutory validation notice stated above. Am. Compl. ¶ 23.

The first sentence ("Call Language") states:

> If you would like to pay by phone, or have any questions, please contact a representative toll-free at 866-378-0797.

Am. Compl. Ex. A.

The second sentence ("Insurance Language") states:

> If you carry any insurance that may cover this obligation, please contact our office at the number above.

Am. Compl. Ex. A.

---
[1] All facts in this section are taken from the Amended Complaint.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013), *as amended* (May 10, 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may

3

consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).[2]

## IV. DISCUSSION

Anela's Amended Complaint asserts that ARR violated two provisions of the FDCPA: Section 1692g and Section 1692e. ARR moves to dismiss Anela's claim on the basis that Anela fails to state a claim upon which relief can be granted because the Insurance Language and Call Language, as a matter of law, are not confusing, overshadowing, or deceptive and thus do not violate the FDCPA. I will grant the motion to dismiss because neither the Insurance Language nor the Call Language misleads the consumer as to his or her statutory rights in violation of the FDCPA.

### A. Section 1692g

Under the FDCPA, a notice of debt must contain a validation notice that informs the debtor how to verify or dispute the debt within thirty days after receiving the notice. The validation notice consists of three statements: (1) a statement informing the consumer that he or she has the right to dispute the debt within thirty days of receiving notice, after which time the debt is presumed valid by the debt collector, (2) a statement informing the consumer that if he or she submits the debt dispute in writing within thirty days, the debt collector will "obtain verification of the debt or a copy of a judgment against the consumer" and send the relevant document to the consumer, and (3) a statement informing the consumer that the debt collector will send him or her the current creditor's contact information if requested by the consumer in writing and within the requisite thirty days. 15 U.S.C. § 1692g(a)(3)-(5).

---

[2] The debt collection letter attached to the Amended Complaint as Exhibit A is explicitly relied upon by the complaint and will be considered.

To satisfy these requirements, a notice of debt must convey to the debtor that he or she must submit a *written* dispute to activate the debt collector's obligation to suspend collection and verify the debt. *See Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991) (holding that a dispute must be in writing to be effective, even though the statutory language in Section 1692g(a)(3) does not expressly state that a debtor's dispute must be written). Because an oral dispute does not suffice to challenge the debt, and therefore does not protect the consumer's rights, a notice of debt that creates the impression that the debtor can call to dispute the debt is invalid under the FDCPA. *See Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 151 (3d Cir. 2013).

Even if all three required statements are included in the collection letter, the validation notice is still insufficient if it is overshadowed or contradicted by other language in the letter. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 355 (3d Cir. 2000). "Whether language in a collection letter violates the FDCPA is a question of law." *Id*. at 353 n.2. Language overshadows or contradicts the validation notice in violation of the FDCPA when it obscures the fact that the consumer has the right to dispute the debt *in writing*. *Caprio*, 709 F.3d at 153-54.

Whether language in the collection letter overshadows or contradicts the validation notice in violation of the FDCPA is evaluated from the perspective of the "least sophisticated debtor." *See, e.g.*, *Wilson*, 225 F.3d at 354; *Graziano*, 950 F.2d at 111; *see also Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) (distinguishing the least sophisticated debtor standard from the higher standard of the reasonable debtor). The least sophisticated debtor standard "is an objective one, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015) (emphasis in original).

While the "least sophisticated debtor" is intended to protect naïve consumers, it "does not go so far as to provide solace to the willfully blind or non-observant." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298-99 (3d Cir. 2008). This standard "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Brown*, 464 F.3d at 454. Consistent with this standard, "even the 'least sophisticated debtor' is bound to read collection notices in their entirety." *Campuzano-Burgos*, 550 F.3d at 299. Congressional policy concerns underlie the expectation that debtors read the entire notice:

> Rulings that ignore these rational characteristics of even the least sophisticated debtor and instead rely on unrealistic and fanciful interpretations of collection communications that would not occur to even a reasonable or sophisticated debtor frustrate Congress's intent to 'insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'

*Id* (quoting 15 U.S.C. § 1692e).

Anela alleges that the Insurance Language and Call Language violate the FDCPA by creating the false impression that the debtor can submit a debt dispute by telephone. Am. Compl. ¶ 27. Because neither the Insurance Language nor the Call Language overshadows or contradicts the validation notice informing the debtor of his or her right to submit a dispute in writing, the Letter does not violate the FDCPA.

1. <u>Insurance Language</u>

Anela relies on *Caprio* to support her allegation that the Insurance Language overshadows or contradicts the validation notice. Anela's reliance on *Caprio* is misguided. In *Caprio*, the debt collector sent a letter to the debtor that stated:

> If we can answer any questions, or *if you feel you do not owe this amount*, **please call** us toll free at **800-984-9115** or write us at the above address. This is an attempt to collect a debt. Any information obtained will be used for that purpose. (NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION).

6

*Caprio*, 709 F.3d at 145 (bold emphasis in original, italics emphasis added). The *Caprio* court held that the language "if you feel you do not owe this amount, please call" contradicted or overshadowed the Notice because it could lead the "least sophisticated debtor" to believe that he or she can dispute the debt by phone. *Caprio*, 709 F.3d at 152. In contrast to this explicit language inviting the debtor to call to dispute the debt if he or she believes it to be wrong, the language in ARR's letter merely invites the debtor to call if he or she carries insurance that may cover the debt. The language in the ARR letter makes no reference to the debtor's beliefs or feelings regarding the validity of the debt.

The FDCPA's prohibition on language overshadowing or contradicting the notice does not preclude the debt collector's ability to offer multiple options in a letter. *Szczurek v. Prof'l Mgmt.*, 59 F.Supp.3d 721, 727-28 (E.D. Pa. 2014). While not addressing the exact same Insurance Language now contested, the court in *Szczurek* found that language requesting the balance be sent to avoid further contact did not contradict or overshadow the validation notice, and by extension, did not violate the FDCPA. *Id*. at 728. The court noted that "the least sophisticated debtor is explicitly not the least sophisticated, selectively-reading debtor." *Id*. at 727. Furthermore, the court found that just because a sentence may be confusing when read in isolation does not mean that the entire letter is confusing to the "least sophisticated debtor," who is still obliged to read the entire notice. *Id*. at 727-28. The *Szczurek* court noted that "we do not evaluate sentences contained in collection letters in a vacuum" and "the least sophisticated debtor, reading the notice in its entirety, would see that he had multiple options." *Id*. The plaintiff in *Szczurek* had the option to call a telephone number if he had medical insurance that would pay the outstanding debt or the option to notify the debt collector in writing that he disputed the debt. *Id*. The *Szczurek* court held that the letter in question did not violate FDCPA Section 1692g

because the "debtor has multiple options, and the least sophisticated debtor, reading the notice in its entirety, would understand that." *Id*.

Just like the letter in *Szczurek*, ARR's Letter presents Anela with multiple options: pay the debt, call ARR to provide insurance information that would pay the debt, or write to ARR within thirty days to dispute the debt. The "least sophisticated debtor" who reads the letter in its entirety would not confuse his or her option to call to *resolve* the debt with his or her option to write to *dispute* the debt. Because the Letter does not invite the debtor to abandon his or her statutory rights by providing the call-in payment resolution option, the Insurance Language does not violate the FDCPA.

The standard requiring the "least sophisticated debtor" to read the letter in its entirety rather than cherry-pick individual sentences is further applied in *Cruz v. Financial Recoveries*, 2016 WL 3545322 (D.N.J. June 28, 2016), where the debt collection letter contained language ("*Cruz* language") nearly identical to the Insurance Language in the present case:

> If you have insurance that may pay all or a portion of this debt, that information can be submitted by calling 1-800-220-0260 or by completing the information on the reverse side of this letter and returning the entire letter to this office at Financial Recoveries, PO Box 1388, Mt. Laurel, NJ 08054.

Id. at *1.

Plaintiff Cruz claimed violations of the same FDCPA provisions, Section 1692g and Section 1692e, that are in dispute in this case. In a nearly identical argument to the one posited by Anela, Cruz alleged that requesting a debtor to call with insurance information contradicts the written dispute provision in the validation notice. *Id*. at *3. The *Cruz* court held that the *Cruz* language did not overshadow the validation notice or misguide the least sophisticated debtor as to his or her statutory rights. *Id*. at *4. The *Cruz* court distinguished *Caprio* because the *Caprio* language, unlike the *Cruz* language, "clearly suggested another means of disputing the debt." *Id*.

The *Cruz* language, by contrast, "makes no reference to disputing the debt, only the provision of insurance information related to the debt." *Id*. The *Cruz* court identified the significance of this distinction in light of the fact that language "arguably or tangentially related to disputing the debt" does not automatically violate the FDCPA. *Id*.

The same standards advanced in *Cruz* are applicable to the present case. The Letter must be read in its entirety to form a full picture of its meaning. The Letter can invite the debtor to call to discuss insurance-related matters without violating the FDCPA provision mandating that disputes be submitted in writing. The Insurance Language inviting the debtor's call makes no reference to disputing the debt. It does not encourage or even suggest an alternative means of disputing the debt. Rather, the Letter requests the debtor call ARR to provide insurance information to pay the debt without interfering with the separate validation notice. Even when viewed from the perspective of the "least sophisticated debtor," the Insurance Language does not overshadow or contradict the validation notice, and therefore does not violate the FDCPA.[3]

2. Call Language

Anela also asserts that ARR violates the FDCPA by providing validation notice that is overshadowed or contradicted by the Call Language, whether read in isolation or in conjunction with the Insurance Language. ARR moves to dismiss Anela's claim on the basis that the language neither deceives nor overshadows the validation notice in violation of the FDCPA.

Two Third Circuit cases support the proposition that the Call Language does not violate the FDCPA by distinguishing language similar to the Call Language in their findings of debtors' statutory rights violations. First, in *Caprio*, the court held that

---

[3] Anela relies largely on *Kassin v. AR Res., Inc.*, 2017 WL 1086760 (D.N.J. Mar. 22, 2017) (holding that the Insurance Language violates the FDCPA). While the same Insurance Language is subject to dispute in *Kassin* and in the present case, an application of the prevailing standard—requiring even the least sophisticated debtor to read the notice in its entirety— suggests that the Insurance Language does not violate the FDCPA.)

language inviting the debtor to call "if you feel you do not owe this amount" violates the FDCPA. *Caprio*, 709 F.3d at 152. To clarify its decision, the court explicitly stated that the letter in question "did more than merely ask Caprio to call or write if 'we can answer any questions.'" *Id*. This holding indicates that a mere invitation for the debtor to call with questions is not an invitation to call to dispute the debt, and therefore not a FDCPA violation. Second, in *Laniado v. Certified Credit & Collection Bureau*, 705 Fed.Appx. 87 (3d Cir. 2017), the court similarly addressed the question of whether language in the debt collection letter inviting the debtor to call violated the FDCPA. The Third Circuit found that language inviting a call if there was "any discrepancy" contradicted or overshadowed the required validation notice. *Id*. at 92. In its ruling, the court distinguished the type of language at issue in the present case, stating that the *Laniado* letter "did more than merely ask [Laniado] to call…if 'we can answer questions.'" *Id*. at 91 (citing *Caprio* 709 F.3d at 152).

Both *Caprio* and *Laniado* indicate that an invitation for the debtor to call "if we can answer questions" is not in itself sufficient to overshadow or contradict the required validation notice. Given the substantial similarity between this language and the Call Language's "if you . . . have any questions," the Call Language does not violate the FDCPA.

Including a phone number to give the consumer convenient contact information is not equivalent to deceiving the consumer into submitting a debt dispute by phone. *Riccio v. Sentry Credit, Inc.*, CV171773BRMTJB, 2018 WL 638748 at *1, 5 (D.N.J. Jan. 31, 2018). In *Riccio*, debt collector Sentry sent debtor Riccio a debt collection letter with the required validation notice. *Id*. at *1. The letter provided Riccio with three options for contacting the debt collector: a

toll-free telephone number, a mailing address, and a website. These three contact options were contained within display boxes, with the words "contact us with one [of] our convenient options" written above. *Id*. Riccio alleged that the debt collection letter violated the FDCPA because it provided her with several options for contacting the debt collector, which in turn overshadowed the writing requirement in the validation notice. *Id*. Specifically, Riccio alleged that that these three contact options would leave a debtor "uncertain as to her rights and what she must do to effectively dispute the debt." *Id*. at *4. The *Riccio* court held that the letter did not violate the FDCPA because the display boxes merely provided the consumer with contact information, and thus did not conflict with the separate validation notice. *Id*. at *6.

Just like the call display box in *Riccio*, ARR's Call Language provides the debtor with convenient contact information that is entirely separate and distinguishable from the validation notice. Given the fact that the contact information does not interfere with the statutorily required notice, it neither overshadows nor contradicts the validation notice.

Because neither the Insurance Language nor the Call Language overshadows or contradicts the validation notice, the Letter does not violate the FDCPA.

### B. Section 1692e

Anela also alleges that the Letter violates FDCPA Section 1692e, which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15. U.S.C. § 1692e(10). Because the language does not violate FDCPA Section 1692g, it correspondingly does not violate Section 1692e. *See Caprio*, 709 F.3d at 155 ("[w]hen allegations under 15 U.S.C. 1692e(10) are based on the same language or theories as allegations under 15 U.S.C. § 1692g, the analysis of the § 1692g claim is usually dispositive"); *see also Ardino v. Lyons, Doughty & Veldhuis*, 2011 WL 6257170 at *11-

11

*12 (D.N.J. Dec. 14, 2011); *Vasquez v. Gertler & Gertler, Ltd.*, 987 F.Supp. 652, 659 (N.D. Ill. 1997). Because Anela has not asserted any other basis for a Section 1692e(10) violation beyond the faulty Section 1692g claim, she has not stated a claim that the Letter violates this section.

## V. CONCLUSION

For the reasons set forth above, I will grant AR Resources' motion to dismiss.

                                                s/Anita B. Brody

                                          _____
                                          ANITA B. BRODY, J.

COPIES VIA ECF ON 6/12/2018